# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

TRAVIS NEAL                                                                       PLAINTIFF


v.                                        NO. 3:05CV00035 HDY


JO ANNE B. BARNHART,                                                             DEFENDANT
Commissioner of the Social
Security Administration


## MEMORANDUM OPINION AND ORDER

The record reflects that in May of 2002, plaintiff Travis Neal ("Neal") filed

applications for disability insurance benefits and supplemental security income benefits

pursuant to Titles II and XVI of the Social Security Act ("Act").  His applications were

denied initially and upon reconsideration.  He next requested, and received, a de novo

administrative hearing before an Administrative Law Judge ("ALJ").  In June of 2004, the

ALJ issued a ruling adverse to Neal.  He then appealed that ruling to the Appeals Council.

In February of 2005, the Appeals Council affirmed the ruling of the ALJ.  That ruling

therefore became the final decision of the Commissioner of the Social Security

Administration ("Commissioner").  In March of 2005, Neal commenced the proceeding

at bar in which he challenged the final decision of the Commissioner.

The sole inquiry for the Court is whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  See Id. at 1012.  The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion.  See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify those findings.  The Commissioner made findings pursuant to the five step sequential evaluation process.[1] At step one, the Commissioner found the following:

> The claimant first met the disability insured status requirements of the Social Security Act on April 1, 1996, the alleged onset date, and continued to meet them only through June 30, 1997.
>
> Testimony and earnings information in the record … indicate the claimant performed work activity at a level to be considered substantial gainful activity for a period of a few months in 1999, which is after the alleged onset date of disability.  However, there is no documented evidence the claimant has performed substantial gainful work activity at any other time since the alleged onset date of disability.

---

[1]

The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work."  See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

<u>See</u> Transcript at 17.  At step two, the Commissioner found that Neal has a history of

"diagnoses and/or treatment for chronic obstructive pulmonary disease … which are

severe impairments." <u>See</u> Transcript at 17.  At step three, the Commissioner found that

Neal's impairment was not listed in, nor medically equal to one listed in, the regulations.

Given the foregoing findings, the Commissioner inquired into "whether the claimant can

perform his vocationally relevant past work or any other work which exists in significant

numbers in the local, regional or national economy."  <u>See</u> Transcript at 10.  The

Commissioner acknowledged that the "[r]esolution of these issues requires assessment

of the claimant's residual functional capacity." <u>See</u> Transcript at 10.  With regard to

Neal's residual functional capacity, the Commissioner found the following:

> Based upon consideration of all the above discussed factors and criteria, together with the medical evidence, the undersigned Administrative Law Judge has concluded the claimant does not experience any symptomatology of such duration, frequency, or intensity to be disabling or to preclude the performance of medium work activity.  (The functional capacity to perform medium work also includes the functional capacity to perform sedentary and light work activity.)  He can occasionally lift up to 50 pounds and can frequently lift or carry objects weighing up to 25 pounds.  He is also capable of sitting with normal breaks for a total of at least 6 hours in an 8-hour workday, and is further capable of standing and/or walking with normal breaks for a total of at least 6 hours in an 8-hour workday …  Any environmental limitations the claimant may occasionally experience should/would not substantially reduce his ability to perform medium work activity.  He does not have any other additional postural limitations, manipulative limitations, and/or mental limitations.
>
> …

> The evidence of record … and testimony indicate the claimant has worked in the relevant past as a sanitation worker on a garbage truck, and that this job involved lifting and/or carrying no more than 20 or 25 pounds, and was performed at no more than the medium exertional level. Testimony also indicates the claimant left that previous job not due to an inability to perform that job due to his impairment, but instead left due to having been arrested and subsequently incarcerated in a prison facility.

See Transcript at 15-16.  Thus, at step four, the Commissioner found that Neal's residual functional capacity was consistent with "the performance requirements of his vocationally relevant past work, and the limitations and/or restrictions caused by his impairment would not prevent him from being capable of returning [to] that past work." See Transcript at 16.  On the basis of the foregoing, the Commissioner found that Neal was not disabled within the meaning of the Act.

Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Neal thinks not.  He maintains that his residual functional capacity was not properly assessed by the Commissioner.  Neal specifically maintains the following:

> The ALJ's findings are inconsistent regarding Neal's breathing problems.  At step two, the ALJ found that Neal suffers from COPD [i.e., chronic obstructive pulmonary disease] to such an extent that it [is] a severe impairment under the Commissioner's regulations. …  When assessing Neal's RFC at step four, however, the ALJ found that Neal can perform the full range of medium work. The ALJ further stated that "[a]ny environmental limitations the claimant may occasionally experience should/would not substantially reduce his ability to perform medium work activity." …  So, while the ALJ found on the one hand that Neal's COPD is serious enough to "significantly limit" his work activities, he apparently determined on the other that Neal's COPD does not impose any significant exertional or environmental restrictions.

The ALJ's RFC assessment is not supported by the medical evidence. Dr. [Michael] Langley, the Commissioner's own consultative examiner, was the only medical professional to give an opinion on Neal's ability to perform work-related activities.  Dr. Langley diagnosed Neal as suffering from COPD and restrictive or obstructive airway disease, and he concluded that "[t]his patient's limitations are due to the respiratory distress.  … Walking is limited by dyspnea." … Yet, there is no restriction on Neal's ability to walk in the ALJ's RFC assessment.  Dr. Langley unequivocally stated that Neal's walking is limited by his shortness of breath, but the ALJ ignored that limitation.  The ALJ's failure to include any restriction on Neal's ability to walk in his RFC assessment is curious, considering that he specifically stated in his written decision that "Dr. Langley's opinions are found to be credible and persuasive." …

There is no medical evidence in the record that supports the ALJ's decision to omit the restriction imposed by Dr. Langley.  In Lauer v. Apfel … the Eighth Circuit made it clear that while an ALJ is not limited to considering medical evidence in evaluating a claimant's residual functional capacity, there must be "some medical evidence" that supports the ALJ's RFC assessment before the ALJ's decision can be affirmed. …  In this case, there is none. …   The ALJ apparently succumbed to the temptation to "play doctor" and made his own independent medical findings. …

See Document 9 at 7-9.

As the Court noted, Neal maintains that his residual functional capacity was not properly assessed by the Commissioner.   Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations."  See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)].  The assessment is made using all of the relevant evidence in the record; it includes "the medical records, observations of the treating physicians and others, and [a person's] own description of his limitations."  See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

The medical records in this proceeding are not voluminous.  In fact, they are quite scant.  They nevertheless reveal that Neal has only one functioning lung, having lost the use of his right lung at the age of fifteen after being shot at close range with a .22 rifle.  See Transcript at 78.  He alleged, and continues to allege, that he is disabled because of his problems breathing.  Despite the alleged existence of that impairment–the onset date of which was allegedly April of 1996–he did not seek, or otherwise receive, medical attention for his breathing problems until after he filed his applications for benefits.

The record reflects that Dr. Michael Langley ("Langley") examined Neal in August of 2002 at the direction of the Commissioner.  Neal's history of breathing problems were outlined in Langley's report.  Neal represented that his breathing became particularly difficult when he engaged in physical activity, such as climbing stairs.[2]  He additionally represented that he had chest pain approximately three times a day and could not lift more than twenty to twenty-five pounds.   Langley diagnosed Neal with chronic obstructive pulmonary disease, "restrictive vs. obstructive airway disease," and a "[status post] chest wound."   See Transcript at 84.   Langley provided the following additional notes from the examination: "This patient's limitations are due to the respiratory distress.  His physical abilities in the office are unlimited.  He can hear, see, and speak normally.  Walking is limited by dyspnea."  See Transcript at 85.

---

[2]

He specifically represented that he could not climb more than a "[half] flight of steps" before becoming short of breath.  See Transcript at 78.

In January of 2003, Dr. Steve Owens ("Owens"), an agency medical consultant, prepared a residual functional capacity assessment of Neal at the direction of the Commissioner.  Owens found that Neal was capable of, <u>inter</u> <u>alia</u>, occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing and/or walking (with normal breaks) for a total of approximately six hours in an eight hour day, and sitting (with normal breaks) for a total of approximately six hours in an eight hour day.  <u>See</u> Transcript at 94.

The same month, Neal underwent a series of pulmonary function tests at St. Bernard's Regional Medical Center ("St. Bernard's") in Jonesboro, Arkansas.  At the conclusion of the tests, the attending physician noted the following: "Patient effort was good.  Ventolin was given in 3 meter doses.  Pre-bronchodilator heart rate was 77, and 02SAT was 96% on room air.  Post-bronchodilator heart rate was 80, and 02SAT was 98% on room air."  <u>See</u> Transcript at 87.

In November of 2003, Neal visited St. Bernard's complaining of difficulty breathing and chest pain.  The records generated during his visit reflect that he reported no prior history of similar problems.  He acknowledged smoking marijuana and smoking one to 1 ½ packs of cigarettes a day.  <u>See</u> Transcript at 105.  He was examined by the hospital staff, and they found nothing unusual about his condition.  He was, however, diagnosed with bronchitis.  He was prescribed antibiotics and an inhaler as treatment for his bronchitis.  <u>See</u> Transcript at 108.

At the time of the evidentiary hearing, Neal was thirty-two years old and had an eleventh grade education.  He was asked during the hearing why he was unable to work during 1997; he answered, "I don't know.  Because I just couldn't find a job I guess."  See Transcript at 131.  Neal testified that in 1999, he briefly worked for the City of Jonesboro, Arkansas, as a trash collector.  He testified that he stopped working because he "got locked up."  See Transcript at 127.  Neal testified that he was released from custody in 2000 but has not worked since his release.  He was asked why not, and he answered, "Because I couldn't – that's when I got started having chest pains and can hardly breath."  See Transcript at 129.  Neal was also asked why, "other than the fact that your chest hurts sometimes, … can't you work now."  See Transcript at 132.  He answered, "I can't lift nothing over 50 pounds.  I can't be around chemicals."  See Transcript at 132.[3]  He testified that he was not taking any medication for his breathing problems, although he did testify that he used a "breathing machine" twice a month for one hour.  See Transcript at 133.  Neal testified that he could not sit for very long, could not stand for more than twenty minutes, and could not walk for more than two blocks without stopping.  With respect to his daily activities, he testified that he watches television and helps with some household chores.[4]

---

[3]

He later testified that he was unable to lift and carry a twenty-five pound object across a room without stopping.  See Transcript at 140.

[4]

His testimony regarding his daily activities is not inconsistent with the outline of daily activities he provided in his disability applications.

Having carefully considered the foregoing, and having given particular consideration to "the medical records, observations of the treating physicians and others, and [Neal's] own description of his limitations," see McKinney v. Apfel, 228 F.3d at 863, the Court finds that the Commissioner did not err in assessing Neal's residual functional capacity.   The Commissioner could find that Neal's residual functional capacity was such that he could perform work at the medium exertional level.

20 C.F.R. 404.1567(c) provides, in part, that medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  With regard to that issue, the evidence was not one-sided.  First, the medical evidence was somewhat in conflict.  Langley, who examined Neal only once, noted Neal's representation that he could not lift more than twenty to twenty-five pounds.  It does not appear that Langley ever offered an opinion as to what amount of weight Neal could specifically lift or the degree to which his abilities to stand and sit were impaired by his breathing problems.  It is not insignificant, though, that Langley found Neal's "physical abilities in the office [to be] unlimited."  See Transcript at 85. Langley's finding suggests an appreciable ability to stand and/or sit.  Owens, however, who never examined Neal but made findings solely on the basis of the record, opined that Neal could occasionally lift fifty pounds, could frequently lift twenty-five pounds, could stand or walk for approximately six hours in an eight hour day, and could sit for a total of approximately six hours in an eight hour day.

-9-

Second, Neal's own testimony was not a model of consistency and his credibility was open to question. He initially testified that he could not lift an object over fifty pounds; he later testified, however, that he could not lift an object over twenty-five pounds. He testified that he did not work in 1997 because he could not find a job. When he was able to find a job in 1999 with the City of Jonesboro, Arkansas, he eventually stopped working not because of his alleged impairment but because he was incarcerated. Neal testified that he was not taking any medication for his breathing problems, although he did testify that he used a "breathing machine" twice a month for one hour. See Transcript at 133. It is not improper to question the disabling nature of his breathing problems when he used a "breaching machine" only twice a month. He acknowledged during a visit to St. Bernard's that as late as November of 2003, he was smoking marijuana and smoking one to 1 ½ packs of cigarettes a day. He was doing so despite the alleged existence of a disabling impairment, specifically, his problems breathing.

On the basis of the foregoing, the Court finds that the Commissioner did not err in assessing Neal's residual functional capacity. The Commissioner could find that Neal's residual functional capacity was such that he could perform work at the medium exertional level and could therefore return to his past relevant work. There is "some medical evidence" to support that finding. Consequently, Neal's complaint is dismissed; all requested relief is denied.

IT IS SO ORDERED this \_\_24\_\_\_ day of February, 2006.


_____
UNITED STATES MAGISTRATE JUDGE